## P. MORAN ET AL.

### v.

## JOHN LILLEY.

STATEMENT—VERDICT AGAINST EVIDENCE.—The court is satisfied from the evidence. that the pretended contract of sale was a mere cover to aid a debtor in concealing property from his creditors; that the appellants should be allowed to apply a sufficient amount of the money in their hands to satisfy their claim against the debtor, and that the verdict was against the evidence.

APPEAL from the County Court of Kane county; the Hon. J. W. RANSTEAD, Judge, presiding. Opinion filed February 24, 1882.

Mr. EUGENE CLIFFORD, for appellants; upon the right of appellants to retain sufficient of the proceeds in their hands to satisfy them for advances made, cited Winne v. Hammond, 37 Ill. 99; Eaton v. Truesdell, 52 Ill. 307.

Mr. A. J. HOPKINS and Mr. N. J. ALDRICH, for appellee; that a judgment will not be reversed on account of error in some of the instructions, where the jury are not misled, and justice has been done, cited Graves v. Shoefelt, 60 Ill. 462; C. B. & Q. R. R. Co. v. Dixon, 63 Ill. 151; T. P. & W. R. R. Co. v. Ingraham, 58 Ill. 120; Hardy v. Keeler, 15 Ill. 152; Pahlman v. King, 49 Ill. 266; McConnell v. Kibbie, 32 Ill. 175; Howard F. & M. Ins. Co. v. Cornick, 24 Ill. 455; Stobie v. Dills, 62 Ill. 432.

PILLSBURY, J. The appellants were commission merchants in the city of Chicago, and as such, frequently made advances to their customers upon goods to be thereafter consigned to them. On the eighth day of April, 1881, they advanced to one J. E. Grant, one of their customers, $700, taking from him a receipt for the products of the "Montgomery Cheese Factory," of which said Grant had previously been proprietor, and was by the appellants still supposed to occupy that rela-

tion to the manufactory.   On the 14th day of April a consign-
ment was made to them of butter and cheese from said fac-
tory, but in the name of the appellee as consignor.   The appel-
lants immediately notified the appellee by letter that they had
made advances to Grant upon the products of the cheese fac-
tory, and claimed to hold a lien upon the consignment for the
payment of such advances.   The appellee did not reply to this
notification, but Grant went to Chicago, saw the appellants,
and told them he had become involved, and had to ship the
goods in Lilley's name, to keep his Ball Mound creditors off
who had him arrested.   After this, other consignments were
made by Lilley to the appellants, as in the first instance.
Lilley and Grant went to Chicago, where $200 was paid to
Lilley by the appellants, as they claim, by the consent of
Grant; Lilley brought this suit against the appellants to recover
the balance due upon the consignments aforesaid, and appel-
lants claim the right to apply the same upon Grant's indebted-
ness to them upon the ground that the goods shipped really
belonged to Grant.   On the trial he recovered, and appellants
bring the record to this court.

Upon the trial below, the appellee introduced in evidence
the contract under which he claims the right to recover the
value of the goods shipped to appellants as follows:  "This
agreement, made and entered into by and between James E.
Grant, of Montgomery, county of Kane, and State of Illinois,
party of the first part, and John Lilley of the same place,
party of the second part, witnesseth, that for and in considera-
tion of the covenants and agreements hereinafter to be kept
and performed by the party of the first part, the party of the
second part hereby agrees to, and with the party of the first
part to become responsible to the patrons of the Montgomery
Cheese Factory, at Montgomery, Illinois, for all the milk that
may be delivered at said factory, and in consideration thereof,
the party of the second part is to have full control of all the
products of said factory during the continuance of this agree-
ment, to grant, bargain and sell said products at such time as
he may deem best, either by himself or agent, as he may elect
But in case the said J. E. Grant shall sell by the direction of

the said Lilley, that the proceeds of said sale shall be immediately paid over to the said Lilley. A further consideration of this agreement is, that said J. E. Grant shall pay up for all the milk that has been delivered to said factory previous to the first day of April, 1881. The further agreement is, that all the proceeds of any and all sales of the product of said factory in excess of paying the patrons for said milk so delivered to said factory, shall be paid over to the said J. E. Grant. This agreement may be discontinued by giving one month's notice by either party.

Dated this the 1st day of April, 1881.

(Signed):           JOHN LILLEY,
J. E. GRANT."

The appellee claims that under this contract, he took possession of the factory on the first day of April, and continued to run it until about the first of May, when Grant sold out the factory to one McConnell, when he surrendered possession to the purchaser.

We shall not enter upon a detailed statement of the testimony contained in this record, bearing upon the question of the good faith of the parties in entering into this very singular contract, where all the benefits are upon one side, and all the disadvantages and liabilities are upon the other; where one party without any agreed compensation agrees to run another's business, for the privilege of paying the patrons of such business, until such time as either party may terminate such contract by thirty days' notice. We have carefully examined and considered the testimony in the case, and find that it is in harmony with the legitimate inferences to be drawn from the peculiar provisions of the contract itself; that such contract was designed by the parties as a mere cover to keep the property of Grant from his creditors; that the property still remained that of Grant, and was so considered by the parties. The evidence sufficiently shows that it was never contemplated between Grant and Lilley, that Lilley should pay out of his funds for milk furnished the factory, in case the products from the factory would not be sufficient to pay for it.

When Grant sold to McConnell, all such debts were as-

sumed by McConnell, and Lilley simply stepped out, relieved of any such debts so assumed by McConnell. Finding as we do from the evidence, that, as to the appellants, Lilley was but a volunteer, the property still being that of Grant, the appellants should be allowed to apply a sufficient amount of money, received by them from the sale of the goods, to satisfy their claim for the advances made by them to Grant. The court should have granted them a new trial in this cause, and for the reason that it did not, the judgment will be reversed, and the cause remanded.

Judgment reversed.